UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___03/31/2021___

------------------------------------------------------------------ x
KEITH DREW,                                          :
                                                     :
                              Plaintiff,             :
                                                     :        18-cv-011709 (ALC)
                  -against-                           :
                                                     :        **OPINION & ORDER**
CITY OF NEW YORK, ET AL.,                            :
                                                     :
                              Defendants.            :
                                                     :
------------------------------------------------------------------ x

ANDREW L. CARTER, JR., District Judge:

Plaintiff Keith Drew (hereinafter, "Plaintiff" or "Mr. Drew") brings this action under 42 U.S.C. § 1983 against the City of New York (hereinafter, "Defendant" or "City"),[1] alleging violations of his federal constitutional rights including the deprivation of property without due process of law pursuant to the Fifth and Fourteenth Amendments. Mr. Drew challenges the constitutionality of the City's policy which he alleges resulted in the deprivation of property without due process of law and seeks injunctive relief to prevent the City from continuing to enforce this policy. In the alternative, he seeks declaratory relief "determining actual phone usage rates accrued" and "clarify[ing] [his] rights and standings." Mr. Drew also asserts claims of municipal liability against the City of New York.

Defendant filed a motion for summary judgment as to all of Plaintiff's claims. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

---

[1] Mr. Drew also brought this action against "Unknown Supervisor" and "Unknown Employee." On June 15, 2020, Plaintiff filed a motion for leave to amend his Complaint solely to name these defendants. ECF No. 59. On July 9, 2020, Magistrate Judge Sarah Netburn denied Plaintiff's motion because he "ha[d] not established good cause to modify the existing scheduling order that required him to amend his pleadings and join parties by June 21, 2019 (ECF No. 14) and discovery in this matter closed on December 23, 2019 (ECF No. 43)." ECF No. 68. Accordingly, the Court *sua sponte* **DISMISSES** Plaintiff's claims against Unknown Supervisor and Unknown Employee without prejudice. *See, e.g.*, *Delrosario v. City of N.Y.*, No. 07-cv-2027, 2010 WL 882990, at *5 (S.D.N.Y. Mar. 4, 2010) (*sua sponte* dismissing claims against unknown defendants for failure to prosecute "[w]here discovery has closed and the Plaintiff has had ample time and opportunity to identify and serve [unknown] Defendants").

## PROCEDURAL HISTORY

Plaintiff initiated this action *pro se* around November 2018 in the Supreme Court of the State of New York, Bronx County. *See* ECF No. 1. Defendant removed the action to this Court on December 14, 2018, *id.*, and filed an Answer to Plaintiff's Complaint on May 2, 2019. ECF No. 6. The case was then referred to Magistrate Judge Sarah Netburn for general pre-trial on May 6, 2019. ECF No. 7. On May 21, 2019, Judge Netburn conducted an initial pretrial conference and ordered Defendant to provide Plaintiff with information relevant to his case. May 21, 2019 Minute Entry; *see also* ECF No. 17. On July 19, 2019, Plaintiff submitted a declaration requesting class certification and a temporary restraining order (TRO) against Defendant. ECF No. 18. On August 6, 2019, Plaintiff filed an application for pro bono counsel. ECF No. 23. Judge Netburn issued an order denying Plaintiff's request for class certification and application for pro bono counsel on August 12, 2019, ECF No. 26, and subsequently denied his request for a TRO against Defendant, ECF No. 27. On November 25, 2019, Judge Netburn issued an order to produce Plaintiff for deposition, ECF No. 41, and Plaintiff's deposition was conducted on December 20, 2019, ECF Nos. 46, 48. Discovery in this case closed on December 23, 2019. ECF No. 43. Defendant filed a motion for summary judgment and supporting memorandum of law on June 25, 2020 ("Def. Mot."). ECF Nos. 61, 64. Plaintiff filed his opposition on August 5, 2020 ("Pl. Opp."). ECF No. 69.[2] Judge Netburn scheduled a settlement conference in *Drew v. City of N.Y.*, No. 18-cv-08529, a case involving the same plaintiff and at least one of the same defendants as this case. ECF No. 71. Judge Netburn ordered the parties in this case to meet and confer to discuss whether they should also participate in that settlement conference. *Id.* On August 20, 2020, Defendant filed a letter with the Court advising that the parties met and

---

[2] For ease of reference, citations to Mr. Drew's Complaint and opposition will be made using the ECF pagination.

conferred, but ultimately decided that participation in that settlement conference would not be productive. ECF No. 72.

On March 1, 2021, the Court issued an Order to Show Cause as to why Defendant's motion for summary judgment should not be deemed fully briefed. ECF No. 73. Defendant subsequently filed a reply brief in further support of their motion for summary judgment ("Def. Reply"). ECF No. 78. Therefore, Defendant's summary judgment motion is deemed fully briefed.

## BACKGROUND

This case arises from Plaintiff's allegations that the City of New York deprived him of his personal property without due process, more specifically, that they "confiscated" money from his inmate funds account. The Court will first lay out how the inmate funds accounts work and then provide background on the specific transactions at issue.

### A. Inmate Funds Accounts and Unpaid Restitutions

Any money earned and/or received by inmates is deposited into their inmate fund account. The New York City Department of Correction ("DOC") maintains lists of transactions (e.g., when money is transferred in or deducted from an inmate's account), including for Mr. Drew ("Inmate Transaction List"). Sprayregen Decl. Ex. E ("Lyons Decl."), ¶¶ 4-5. When an inmate lacks funds, the DOC will loan an inmate monies for certain expenses, such as a MetroCard or a haircut. Sprayregen Decl. Ex. D ("Antonelli Aff."), ¶ 3. These monies are known as "unpaid restitutions." *Id.* However, the Inmate Transaction List never shows a negative balance, even when an inmate owes DOC money that DOC has loaned the inmate. Lyons Decl. ¶¶ 5, 10. Instead, when an inmate runs out of funds, any subsequent charges are recorded on an inmate's "Unpaid Restitution List." Lyons Decl. ¶ 10. "If an inmate has unpaid restitutions, any

money deposited in the inmate's fund account . . . goes directly towards repayment of such unpaid restitutions." Antonelli Aff. ¶ 3. If an individual leaves DOC custody owing unpaid restitutions, and subsequently returns to DOC's custody, that inmate's prior unpaid restitutions are transferred to the inmate's current account. *Id.* ¶ 4.

Prior to May 2019, inmates were charged for telephone calls made. Lyons Decl. ¶¶ 7-8. That meant that if an inmate did not have any funds in their account, any phone calls would be recorded on that inmate's Unpaid Restitution List. *Id.* ¶ 10. Additionally, if an inmate had unpaid restitutions, when money was deposited into the inmate's account, the money would go to pay off outstanding telephone charges first. *Id.* ¶ 11. The calls were not recorded on the Inmate Transaction List on the day they were made, rather, they were recorded when the calls were paid (i.e., when DOC would apply the recently received funds to the outstanding telephone charges). *Id.* ¶ 9.

Starting in May 2019, DOC no longer charged inmates for telephone calls, in accordance with a New York City law passed the previous year. Antonelli Aff. ¶ 5. As a result of this law, any unpaid restitutions accrued due to phone calls made prior to May 2019 were removed from an inmate's Unpaid Restitution List. *Id.*

**B. Mr. Drew's Inmate Transaction List and Unpaid Restitution List**

Mr. Drew's Unpaid Restitution List reflects a total of 59 charges for haircuts/hairstyles, MetroCards, filing fees and a disciplinary surcharge between April 8, 2010 and August 22, 2019. Sprayregen Decl. Ex. B ("Unpaid Restitution List"). Plaintiff's Unpaid Restitution List shows that he owes DOC $193.09. *Id.* Mr. Drew's Inmate Transaction List shows a total of approximately 761 transactions between July 26, 2015 and August 22, 2019, including payroll deposits; mail, visitor and third-party deposits, Vendor Phone Charges and Telephone

Surcharges; disciplinary ("DSC") charges; court filing fees; haircuts/hairstyle charges; and restitution transfers. Sprayregen Decl. Ex. C ("Inmate Transaction List"); Pl. Opp. Ex. 2 (ECF No. 70 at 41-48) (Aug. 5, 2018 to Sept. 15, 2018 charges); *id.* Ex. 3 (ECF No. 70 at 57-60) (July 17, 2016 to Aug. 5, 2018 charges).[3] Mr. Drew's Inmate Transaction List shows that his unpaid restitution balance is 193.09 and that his unpaid filing fee balance is $2,774.60. Inmate Transaction List at NYC000410.

The majority of the transactions recorded on Mr. Drew's Inmate Transaction List were telephone charges. *Id.* Charges appearing on the Unpaid Restitution List are listed on the Inmate Transaction List but were not deducted from the inmate funds account and do not have an amount associated with them on the Inmate Transaction List. *See, e.g.*, Inmate Transaction List at NYC000389 (haircut/hairstyle charge). Most relevant for our purposes, Mr. Drew had money deposited into his inmate account as follows:

| Date of Deposit | Amount of Deposit | Source |
|---|---|---|
| 11/12/15 | $8.80 | Payroll |
| 11/12/15 | $8.80 | Payroll |
| 01/19/16 | $10.00 | Mail Deposit |
| 04/02/16 | $17.50 | Payroll |
| 04/09/16 | $17.50 | Payroll |
| 06/02/16 | $20.00 | Mail Deposit |
| 07/12/16 | $30.00 | "New Admission" |
| 02/04/18 | $20.00 | Visit Deposit |
| 08/04/18 | $10.00 | Third-Party Deposits |
| 08/18/18 | $17.50 | Payroll |
| 08/25/18 | $17.50 | Payroll |
| 09/01/18 | $17.50 | Payroll |
| 09/08/18 | $17.50 | Payroll |
| 09/15/18 | $17.50 | Payroll |
| 09/29/18 | $17.50 | Payroll |

---

[3] Plaintiff's Exhibits 2 (Bates Nos. NYC000219-226) and 3 (Bates Nos. NYC000215-218) are both part of the same document and contain the same information as the Inmate Transaction List attached to the Sprayregen Declaration as Exhibit C. However, the Inmate Transaction List is a more complete record of all the transactions because Plaintiff's exhibits only reflect the period between July 17, 2016 and September 15, 2018, whereas the Inmate Transaction List reflects the period between July 26, 2015 and August 22, 2019. This is contrary to Mr. Drew's assertion that Exhibit 3 is "identical" to Exhibit C, "except for the fact that [Exhibit 3] is the original and contains more entries and more details." Pl. Opp. at 18.

| | | |
|---|---|---|
| 10/06/18 | $17.50 | Payroll |
| 10/13/18 | $17.50 | Payroll |
| 10/19/18 | $17.50 | Payroll |
| 10/26/18 | $17.50 | Payroll |
| 11/10/18 | $17.50 | Payroll |
| 02/11/19 | $25.92 | Payroll |
| 02/19/19 | $25.92 | Payroll |

In accordance with DOC policy, each time that Mr. Drew had funds deposited into his account,

money was deducted from his account to pay for previous telephone calls made:[4]

| Date of Deposit | Deposit Amount | Date of Deduction | Number of Phone Calls Fully Paid[5] | Cost Per Call | Total Paid |
|---|---|---|---|---|---|
| 01/19/16 | $10.00 | 01/24/16 | 20 | $.48 | $10.00 |
| 04/02/16 | $17.50 | 04/02/16 | 37 | $.48 | $17.50 |
| 04/09/16 | $17.50 | 04/09/16 | 36 | $.48 | $17.50 |
| 06/02/16 | $20.00 | 06/07/16 | 42 | $.48 | $20.00 |
| 07/12/16 | $30.00 | 07/17/16 | 30 | $.48 | $14.40[6] |
| 02/04/18 | $20.00 | 02/04/18 | 87 | $.14[7] | $10.80[8] |
| 08/04/18 | $10.00 | 08/05/18[9] | 73 | $.14[10] | $10.00 |
| 08/18/18 | $17.50 | 08/18/18 | 29 | $.74[11] | $17.50 |
| 08/25/18 | $17.50 | 08/25/18 | 24 | $.74[12] | $17.50 |
| 09/01/18 | $17.50 | 09/01/18 | 24 | $.74[13] | $17.50 |
| 09/08/18 | $17.50 | 09/08/18 | 24 | $.74[14] | $17.50 |
| 09/15/18 | $17.50 | 09/15/18 | 26 | $.74[15] | $17.50 |

[4] Mr. Drew appears to have been charged for a call almost every day (as opposed to all at once on one day) for the period between November 12, 2015 through December 11, 2015 (24 calls total). It is unclear if this was for calls previously made, or calls made on those days.

[5] If funds remained after paying the charges for a set number of calls, the remaining funds went towards paying down the charges for another call that remained to be paid. The remaining balance for that particular call was paid in full the next time Mr. Drew had money deposited into his account. For example, if the inmate's balance was $5.00 and calls were charged at $.48 each, then a total of ten calls previously made would be paid in full, while the remaining balance of $.20 would go towards paying down the charges for another call that remained to be paid. When more money was deposited into the inmate's account, the remaining balance of $.28 would be paid.

[6] The remaining funds ($15.80) in Mr. Drew's account were used to pay a disciplinary charge leaving Mr. Drew's account at a balance of $0.

[7] Telephone charges per call varied from $.08 to $.14, with most calls charged at $.14.

[8] Before deducting funds for telephone charges, $9.20 was deducted from Mr. Drew's account for a disciplinary charge, leaving a balance of $10.80 which went towards paying telephone charges.

[9] One telephone charge was deducted on August 4, 2018.

[10] Telephone charges per call varied from $.08 to $.75, with most calls charged at $.14.

[11] Telephone charges per call varied from $.08 to $.74, with most calls charged at $.74.

[12] Telephone charges per call varied from $.63 to $.74, with most calls charged at $.74.

[13] Telephone charges per call varied from $.63 to $.98, with most calls charged at $.74.

[14] Telephone charges per call varied from $.67 to $.74, with most calls charged at $.74.

[15] Telephone charges per call varied from $.05 to $.74, with most calls charged at $.74.

| 09/29/18 | $17.50 | 09/29/18 | 24 | $.74[16] | $17.50 |
| 10/06/18 | $17.50 | 10/06/18 | 24 | $.74[17] | $17.50 |
| 10/13/18 | $17.50 | 10/13/18 | 24 | $.74[18] | $17.50 |
| 10/19/18 | $17.50 | 10/19/18 | 24 | $.74[19] | $17.50 |
| 10/26/18 | $17.50 | 10/26/18 | 24 | $.74[20] | $17.50 |
| 11/10/18 | $17.50 | 11/10/18 | 24 | $.74[21] | $17.50 |
| 02/11/19 | $25.92 | 02/11/19 | 36 | $.75[22] | $25.92 |
| 02/19/19 | $25.92 | 02/19/19 | 35 | $.75[23] | $25.92 |

### C. Settlement Agreement Between Plaintiff and Defendant

On November 8, 2016, Plaintiff entered into a settlement agreement with the City of New York in which he released and discharged the City of New York and "all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel . . . from any and all liability, claims, or rights of action alleging a violation of [Mr. Drew's] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release" (the "Release") in consideration of $5,000. Sprayregen Decl. Ex. G.

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v.*

---

[16] Telephone charges per call varied from $.63 to $.74, with most calls charged at $.74.
[17] Telephone charges per call varied from $.63 to $.74, with most calls charged at $.74.
[18] Telephone charges per call varied from $.63 to $.74, with most calls charged at $.74.
[19] Telephone charges per call varied from $.63 to $.74, with most calls charged at $.74.
[20] Telephone charges per call varied from $.67 to $.74, with most calls charged at $.74.
[21] Telephone charges per call varied from $.50 to $.75, with most calls charged at $.74.
[22] Telephone charges per call varied from $.50 to $.75, with most calls charged at $.75.
[23] Telephone charges per call varied from $.60 to $.75, with most calls charged at $.75.

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "There is no issue of material fact where the facts are irrelevant to the disposition of the matter." *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson*, 477 U.S. at 248 (holding that a fact is material if it would "affect the outcome of the suit under the governing law"). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id*. (quoting *Anderson*, 477 U.S. at 252) (emphasis in original).

Considering these standards, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (internal citations

and quotation marks omitted). However, a *pro se* "party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Odom v. Keane*, No. 95-cv-9941, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997) (internal citations and quotation marks omitted).

## DISCUSSION

Mr. Drew's central claim is that the City of New York deprived him of his property, more specifically, "confiscated . . . currency from this Plaintiff on August 3, 2018; in furtherance of, and reliance on an unconstitutional . . . policy that holds liens and surcharges accrued in all previous incarcerations payable in this current detention." Compl. at 7. According to Plaintiff, he was never notified "of any outstanding debts" or "made . . . aware that any money had ever been deposited or removed from the account." *Id.* ¶ 10. Plaintiff "objects to . . . any and all [] past and future seizures [] on the grounds that they are not . . . administrative forfeitures authorized by statute, but [] are in reality [] unconstitutional punishments." *Id.* ¶ 15. In his summary judgment opposition, he asserts that he was charged for calls that he never made, *see, e.g.*, Pl. Opp. at 15-17, 19, 24, and haircuts that he never received, *id.* at 26-27. He also complains about disciplinary charges, *see, e.g.*, Pl. Opp. at 28, and court filing fees that he was charged for, *id.* at 29-30.[24]

### I.   Municipal Liability

"A municipality may be held liable as a 'person' for purposes of Section 1983 when a civil rights violation results from a municipality's policy or custom." *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008). "A plaintiff making a *Monell* claim against a municipality must establish three elements: '(1) an official policy or custom that (2) causes the

---

[24] Part of Mr. Drew's basis for challenging the filing fees is that the filing fee balance issued to Plaintiff on August 23, 2018 was $1,395, "when the actual amount owed . . . was $1,050." Pl. Opp. at 5. However, as of that date, Plaintiff had only filed four cases and owed $1,400 in filing fees (of which $5 had been paid). *See supra* n. 28; *see also* Def. Reply at 6.

plaintiff to be subjected to (3) a denial of a constitutional right.'" *Blazina v. Port Auth.*, No. 06-cv-481, 2008 WL 919671, at *6 (S.D.N.Y. Apr. 1, 2008) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

The City does not dispute that its accounting system with respect to inmate accounts, more specifically its system of deducting funds from an inmate's account and recording charges on an Inmate Transaction List and Unpaid Restitution List, or its policy of rolling over unpaid restitutions charges from prior incarcerations are "official polic[ies]" sufficient to give rise to *Monell* liability. Rather, Defendant asserts that this policy has not caused Plaintiff to be subjected to a denial of a constitutional right. The Court agrees.

### A.  No Denial of a Constitutional Right

Mr. Drew contends that Defendant's policies resulted in "deprivation of a protected interest in life, liberty, or property" and "failed to provide substantive and/or procedural [d]ue [p]rocess" in violation of the Fifth and Fourteenth Amendments. Compl. at 2. Specifically, Mr. Drew alleges that Defendant "confiscated" money from his inmate account and never notified him "of any outstanding debts" or "made [him] aware that any money had ever been deposited or removed from the account." Compl. at 7-8.

### 1.  Due Process Claims Arising Out of Transactions that Occurred Prior to November 8, 2016 Are Barred by the Release Signed by Mr. Drew

On November 8, 2016, Mr. Drew signed a Release which discharged the City of New York and "all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel . . . from any and all liability, claims, or rights of action alleging a violation of [Mr. Drew's] civil rights and any and all related state law claims, from the beginning of the world to the date of this General Release." Sprayregen Decl. Ex. G. The Court concludes that to the extent that Mr. Drew's due

process claims arise out of transactions that occurred prior to November 8, 2016, Mr. Drew's claims are barred by the Release Mr. Drew signed.

In August 2019, Judge Edgardo Ramos dismissed another case brought by Plaintiff against the City of New York alleging that Defendant had violated his constitutional rights, holding that the Release barred his claims. *See Drew v. City of N.Y.*, No. 18-cv-10714, 2019 WL 3714932, at *4 (S.D.N.Y. Aug. 6, 2019). In that case, Judge Ramos agreed with Defendant that the language included in the Release was "unambiguous and enforceable" and stated that "it [was] clear that the release includes claims Drew asserts . . . because it specifies 'any and all liability, claims or rights of action alleging a violation of [Mr. Drew's] civil rights.'" *Id.* at *3. Furthermore, "if the parties [had] desired to limit the scope of the release to the events that gave rise to the previous settlement agreements, they would have, however they did not." *Id.* As in the case before Judge Ramos, Mr. Drew has not "challenge[d] the authenticity of the release, his signature on the release, or conditions under which he signed the release," and therefore the Court concludes that "no reasonabl[e] jury could find that Drew did not sign the release discharging the City from any liability." *Id.* (citation omitted). We see no reason to depart from Judge Ramos' reasoning. Therefore, civil rights claims arising out of transactions occurring before November 8, 2016 are barred.[25]

## 2. Mr. Drew's Due Process Claims are Not Cognizable Under § 1983

As a preliminary matter, the Fifth Amendment does not apply to state actors. *Balaber-Strauss v. Town/Village of Harrison*, 405 F. Supp. 2d 427, 435 (S.D.N.Y. 2005). Therefore, to the extent that Plaintiff asserts a Fifth Amendment claim against the City of New York, that claim must be dismissed with prejudice. *See Hamilton v. N.Y. State Dep't of Corr. & Cmty.*

---

[25] The Court need not address Defendant's statute of limitation argument as the Court finds that any claims arising out of transactions that occurred before November 8, 2016 are barred by the Release signed by Mr. Drew.

*Supervision*, No. 18-cv-1312, 2019 WL 2352981, at *6 n.12 (N.D.N.Y. June 4, 2019) (citing to

*Horton v. Schneiderman*, No. 9:13-cv-742, 2014 WL 2154538, at * 7 (N.D.N.Y. May 22, 2014)).

"Because Plaintiff is imprisoned in a state institution, the Fourteenth Amendment, and not the

Fifth Amendment, applies to his due process violation claims." *Id.* (citing to *Pugliese v. Nelson*,

617 F.2d 916, 918 n.2 (2d Cir. 1980)).

The Court construes Mr. Drew's Complaint to state a violation of the Fourteenth

Amendment, based on the allegations that money was improperly withdrawn from his account

without any notice. However, a prison's loss of an inmate's property "whether intentional or

negligent—will not support a due process claim redressable under § 1983 if adequate state post-

deprivation remedies are available." *Green v. Niles*, No. 11-cv-1349, 2012 WL 987473, at *6

(S.D.N.Y. Mar. 23, 2012) (quoting *Davis v. New York*, 311 F. App'x 397, 400 (2d Cir. 2009)

(summary order)) (internal quotation marks omitted). New York "affords an adequate

postdeprivation remedy in the form of, *inter alia*, a Court of Claims action pursuant to N.Y.

Comp. Codes R. & Regs. tit. 7, § 1700.3(b)(4)." *Id.* (quoting *Davis*, 311 F. App'x at 400)

(internal quotation marks omitted). Thus, even if the City of New York "deprived" him of funds

in his inmate funds account, that injury is not cognizable under § 1983.[26]

Throughout his pleadings, Mr. Drew asserts that he was wrongfully deprived of his funds

because he was charged for phone calls he didn't make and haircuts/hairstyles he did not receive.

For example, Mr. Drew states that he "never made seventy [] of the total of seventy-two [] phone

calls that were charged on August 5, 2018." Pl. Opp. at 24. However, this does not create a

---

[26] In asserting his due process claims, Mr. Drew makes passing references to the Fourth Amendment. *See, e.g.*, Compl. at 18 ("There is no specific intention or consideration presented to justify this restriction on Plaintiff's Fourth Amendment rights."). He also describes the withdrawals made from his inmate account as "seizures." To the extent Mr. Drew attempts to assert a claim pursuant to the Fourth Amendment, the claim must be dismissed. Courts have routinely held that the seizure of funds from an inmate account does not state a valid Fourth Amendment claim. *See, e.g.*, *Hamilton v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 18-cv-1312, 2019 WL 2352981, at *14 (N.D.N.Y. June 4, 2019) (collecting cases).

genuine issue of material fact sufficient to survive summary judgment. A thorough review of the record reveals that Mr. Drew was charged for telephone calls in accordance with DOC policy, *i.e.*, he was charged for previous calls made as funds became available in his inmate account.[27] Mr. Drew also asserts for the first time in his opposition that he "owes no purported Haircuit/Hairstyle charge [sic] on April 8, 2010 through July 1, 2015." Pl. Opp. at 28. However, as established above, any claims arising out of transactions prior to November 8, 2016 are barred by the Release signed by Mr. Drew.

## B. Failure to Train

In addition to asserting a *Monell* claim on the basis of the City's policies, Mr. Drew also asserts a municipal claim of liability premised on an alleged failure to train. Where a *Monell* claim is premised on a failure to train, a plaintiff must allege that failure to train constitutes "deliberate indifference" on the part of the municipality. *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 638 (S.D.N.Y. 2015). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal citations and quotation marks omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (holding that city's failure to train its subordinates satisfies the policy or custom requirement only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal

---

[27]     In his opposition, Plaintiff avers that "[t]he beginning of this action saw the elimination of [$137] in Vendor Phone Charges" which shows "the arbitrary nature of [the] Unpaid Restitution policy." Pl. Opp. at 17. Plaintiff asserts that "[i]t is only because of this litigation that [D]efendant was prompted to eliminate the [$137] in Vendor Phone Charges." *Id.* However, as explained in the Antonelli Affidavit, these charges were removed as a result of a New York City law passed in 2018, effective May 1, 2019. Antonelli Aff. ¶ 5. Thus, the removal of $137 of telephone charges (the difference between his unpaid restitution balance when he filed the Complaint ($327.23), Compl. Ex. 1 (ECF 1-2 at 41), and his unpaid restitution balance as of July 18, 2019 ($189.37)) is not arbitrary nor solely due to this litigation.

Mr. Drew also offers phone records for particular dates as evidence that he was charged for phone calls he did not make. Pl. Opp. Exs. 2, 3. However, these records are incomplete and cannot be used to challenge Defendant's assertion that Mr. Drew was charged for phone calls in accordance with DOC policy.

rights, that the municipality or official can be found deliberately indifferent to the need). "[A]t the summary judgment stage, plaintiffs must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Jenkins v. City of N.Y.*, 478 F.3d 76, 94 (2d Cir. 2007) (internal citations and quotation marks omitted).

Here, Plaintiff has failed to identify any deficiency in the city's training program, much less show how that deficiency caused his alleged constitutional deprivation. Furthermore, because Plaintiff has not established that he suffered a constitutional deprivation, *see supra* I.A., Plaintiff's municipal liability claim premised on failure to train must fail. *See, e.g.*, *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).

## II.    Defendant's Policy Is Not Unconstitutional

Plaintiff also contends that Defendant's policy of rolling over unpaid restitution charges from prior incarcerations when an inmate is reincarcerated is unconstitutional. *See, e.g.*, Pl. Opp. at 12-13. Plaintiff appears to specifically take issue with the rolling over of unpaid disciplinary charges. The Supreme Court has recognized that "federal courts must take cognizance of the valid constitutional claims of prison inmates." *Turner v. Safley*, 482 U.S. 78, 84 (1987) (citing *Procunier v. Martinez*, 416 U.S. 396, 405-406 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)). However, it has also "created a lower level of scrutiny in determining the constitutionality of prison rules" such that "a [rule] need only be reasonably related to a legitimate penological interest." *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996) (citing *Turner*, 482 U.S. at 81). The Second Circuit has held that "deterring inmate misbehavior and raising revenues" are "legitimate interests that pass constitutional muster." *Id.* (citing *Danneskjold v. Hausrath*, 82 F.3d 37, 43 (2d Cir. 1996)). The Court concludes that this

14

policy is rationally related to these legitimate penological interests, and thus the City's policy is constitutional.

In support of his contention that the City's policy in regard to rolling over disciplinary charges from prior incarcerations is unconstitutional, he cites to *Parker v. City of N.Y.*, No. 15-cv-6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017). This case involved the so-called "Old Time Policy" where detainees who did not serve their full disciplinary sentence before being released from custody were required to serve the remainder of their "old" solitary confinement time upon return to DOC custody. *Parker*, 2017 WL 6375736, at *1. Contrary to Plaintiff's assertion, this case did not hold that the policy at issue there was unconstitutional and instead only preliminarily approved a class action settlement relating to claims premised on the "Old Time Policy."

To the extent Plaintiff argues that Defendant's general policy of charging him for expenses such as MetroCards, haircuts, court filing fees[28] and disciplinary violations is

---

[28] Plaintiff challenged the unpaid court filing fees for the first time at his deposition. *See* Sprayregen Decl. Ex. A ("Drew Dep.") at 84:14-84:19. In his opposition, Plaintiff asserts that earlier "Prisoner Authorization[s]" have no "validity" in his later inmate account and that the Prisoner Authorization forms filed become "null and void immediately after release from the holding institution." Pl. Opp. at 29. Plaintiff also asserts that "[t]here is no statutory provision granting [D]efendant the authority to deduct money from Plaintiff's personal, 2018[] account for filing fees authorized under Plaintiff's [] 2016 [] account" and that "District Courts may possess valid statutory provision [sic] for collection of these fees through the process of civil proceedings [] exclusively." *Id.* at 30. Plaintiff's assertions have no legal basis. The Prison Litigation Reform Act ("PLRA") "amended the IFP statute to require the court to collect the full filing fee from petitioner's prison account." *Singletary v. Tomarken*, 13-cv-04727, 2013 WL 5302201, at *1 n.1 (E.D.N.Y. Sept. 19, 2013). Plaintiff has been granted leave to proceed *in forma pauperis*, i.e. without prepayment of the $250 filing fee, in a total of eight cases in this District. *See* Sprayregen Decl. Ex. F; *see also* Order Granting IFP Application, *Drew v. City of N.Y.*, No. 15-cv-07073 (S.D.N.Y. Sept. 10, 2015), ECF No. 5; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 16-cv-00594 (S.D.N.Y. Mar. 8, 2016), ECF No. 4; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 16-cv-02316 (S.D.N.Y. Apr. 4, 2016), ECF No. 4; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 16-cv-00774 (S.D.N.Y. July 7, 2016), ECF No. 5; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 18-cv-08529 (S.D.N.Y. Oct. 3, 2018), ECF No. 4; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 18-cv-10557 (S.D.N.Y. Nov. 15, 2018), ECF No. 4; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 18-cv-10719 (S.D.N.Y. May 28, 2019), ECF No. 6; Order Granting IFP Application, *Drew v. City of N.Y.*, No. 19-cv-04067 (S.D.N.Y. Aug. 2, 2019), ECF No. 6. These charges are reflected in Mr. Drew's Inmate Transaction List as well as in his Unpaid Restitution List. *See* Inmate Transaction List at NYC000389, -390, -392, -393, -403, -407, -409, -410; *see also* Unpaid Restitution List (reflecting filing fee charges for seven cases). In each of these cases Plaintiff signed and submitted a Prisoner Authorization form acknowledging that "the full $350 fee will be deducted in installments from my prison account" even if Plaintiff was "granted the right to proceed *in forma pauperis*" and even if the "case is dismissed. *See, e.g.,*

unconstitutional, the Court disagrees for the same reasons discussed above. *See, e.g.*, *Allen*, 100 F.3d at 259-62 (holding that imposition of disciplinary surcharge is constitutional); *Smith v. Dennison*, No. 09-cv-0057, 2010 WL 1883479, at *5 (W.D. Ky. May 11, 2010) (deduction from inmate account for hygiene products not unconstitutional). Plaintiff is not entitled to free haircuts or MetroCards.[29]

## CONCLUSION

For the reasons herein, Defendant's motion for summary judgment is **GRANTED** and Plaintiff's claims are dismissed.

**SO ORDERED.**

**Dated: March 31, 2021**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**

---

Prisoner Authorization, *Drew*, No. 19-cv-04067, ECF No. 3. This authorization explicitly "authorize[s] the agency holding [Plaintiff] in custody to . . . calculate the amounts specified by 28 U.S.C. § 1915(b), deduct those amounts from [Plaintiff's] prison trust fund, and disburse those amounts to the Court." *Id.* It "applies to any agency into whose custody [Plaintiff] may be transferred [to]." *Id.*

[29] Plaintiff also attempts to frame these charges as "restitution" or "administrative forfeitures," however, these legal terms/concepts have no applicability here. *See, e.g.*, Compl. at 12, 16 (citing 18 U.S.C. § 983(e)) (applicable to forfeitures administered by the Department of Justice); Pl. Opp. at 11-12 (citing to N.Y. C.P.L. § 420.10) (applicable to criminal sanctions imposed at sentencing). To the extent Plaintiff is attempting to assert that the imposition of disciplinary charges violates due process "because it constitutes a forfeiture without proper statutory authority," *see,* *e.g.*, Compl. at 9, the Court will not consider this claim as a matter of comity. *See Allen*, 100 F.3d at 260. "The scope of authority of a state agency is a question of state law and not within the jurisdiction of federal courts." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367). In *Allen*, the Second Circuit recognized that New York courts have found that N.Y. CORRECT. LAW §§ 112, 137 "give the Commissioner of DOCS broad discretion in the implementation of policies relating to fiscal control and management of correctional facilities and to security and inmate discipline." *Id.* (citing *Allah v. Coughlin*, 190 A.D.2d 233 (3d Dep't 1993), *appeal denied*, 82 N.Y.2d 659).